FILED

2007 Jan-23  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CAROL GOFORTH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-05-S-1609-NE |
| | ) | |
| CITY OF DECATUR, d/b/a PARKS | ) | |
| AND RECREATION , | ) | |
| DEPARTMENT OF THE CITY OF | ) | |
| DECATUR, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Carol Goforth, filed this action against her employer, the City of Decatur, Alabama ("the City"), asserting claims for sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and for age-based discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*   Both of her claims arise out of the City's allegedly discriminatory failure to promote her to the position of Director of Parks and Recreation in 2003.[1]   Defendant now has moved for summary judgment on all of plaintiff's claims.[2]  Upon consideration of defendant's motion, the parties' briefs, and the evidentiary submissions, the court concludes the motion should be granted.

---

[1] *See* doc. no. 1 (Complaint).

[2] Doc. no. 21.

## PART ONE

*Standard of Review*

Federal Rule of Civil Procedure 56(c) provides, in the part pertinent here, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted).

## PART TWO

### *Summary of Facts*

**A.**   *The Parks and Recreation Department of the City of Decatur*

The City manages all recreational activities through its Parks and Recreation Department ("the Department"). The Department maintains a number of recreational facilities, including gymnasiums, baseball and softball fields, other multi-purpose athletic fields, an aquatic facility, and several golf courses.[3]

The Director of Parks and Recreation ("the Director") heads the Department, and manages a core group of other supervisory employees, including an Assistant Director, a Superintendent of Recreation, a Superintendent of Parks, and a Superintendent of Cemeteries.[4] The Director is responsible for managing the Department's four-million-dollar budget, which is the second-largest budget within the City system.[5] The Director also receives a salary at the City's highest pay level.[6]

---

[3]Doc. no. 23 (defendant's evidentiary submission, vol. 2), Exhibit 4 (Affidavit of Ronny Russell), at ¶ 6.

[4]Doc. no. 22 (defendant's evidentiary submission, vol. 1), Exhibit 2 (Affidavit of Patricia Woller), at ¶ 8.

[5]*Id.* at ¶ 6.

[6]Doc. no. 24 (defendant's evidentiary submission, vol. 3), Exhibit 7 (Affidavit of Kenneth Smith), at ¶¶ 10-11.

Although the Director reports directly to the City Council ("the Council"), and can be hired and fired only by the Council, he conducts the daily business of the Department "autonomously with little or no direct supervision" from the Council.[7] The Director's duties include "implementing Federal and State grants and the related programs; and, the safe and efficient operation and maintenance of the department [and its] programs and activities . . . ."[8]  The Director must possess the technical expertise to carry out these duties "without supervision from the elected officials."[9] The Director has authority to speak on behalf of the Mayor, and the Mayor and City Council members are ultimately responsible to their constituents for all the Director's decisions and actions.[10]

As of the year 2003, an individual named Julian Walker had served as Director for approximately thirty years.[11]  During the last years of Mr. Walker's employment, Grady Tyler served as Assistant Director of Parks and Recreation; plaintiff served as Recreation Superintendent; and Jeff Dunlap served as Parks Superintendent.[12]  As Mr. Walker neared retirement, the City Council began to make plans for growth and

---

[7]Woller Affidavit, at ¶ 7; *see also id.* at ¶¶ 9, 11.

[8]*Id.* at ¶ 10.

[9]*Id.*

[10]*Id.* at ¶ 9.

[11]*Id.* at ¶ 12.

[12]Doc. no. 22 (defendant's evidentiary submission, vol. 1), Exhibit 1 (Deposition of Carol Goforth), at 15-16.

expansion in the Department's future.  Specifically, the Council members

> had been planning and implementing significant expansions of the Parks
> and Recreation Department's facilities and functions with a particular
> emphasis on developing new athletic fields and the development of a
> port and docking facility to take advantage of the City of Decatur's main
> asset, the Tennessee River and Lake Wheeler.[13]

**B.**    *Plaintiff's Employment History with the Department*

Plaintiff, Carol Goforth, began working with the Department in 1978, as an

Assistant Community Center Supervisor.  She soon was promoted to the position of

Center Supervisor, and she subsequently served as the Supervisor of two different

City recreation centers for a total of approximately nine years.  In September of 1988,

she was promoted to the position of Recreation Superintendent, which she continues

to occupy.  As Recreation Superintendent, plaintiff is charged with supervising the

Department's recreation programs, including managing the activities and employees

of four community centers, and overseeing the city's athletic and therapeutic

programs.[14]

Plaintiff also is a member of, and has served as an officer in, several recreation-

related clubs and associations, including the National Recreation and Parks

Association, the Alabama Recreation and Parks Association, the Amateur Softball

---

[13]Woller Affidavit, at ¶ 13.

[14]Goforth Deposition, at 11-12.

Association National Council, and the Decatur/Morgan County Hospitality Association.   Through her membership in the National Recreation and Parks Association, plaintiff has regularly attended continuing education workshops addressing topics in the recreation field.[15]   Additionally, for approximately ten consecutive years, plaintiff has arranged for the City to host the National Women's Softball Championship tournament for the National Association of Intercollegiate Athletics ("NAIA").[16]   The City has earned approximately three million dollars per year as a result of the NAIA championship, as well as other softball tournaments plaintiff has coordinated.[17]

**C.**   *The 2003 Hiring Process for Director of Parks and Recreation*

When the Director position came open in 2003, Grady Tyler expected to move into the job, and plaintiff expected to take over Tyler's position as Assistant Director.[18]   Tyler approached then-Mayor Lynn Fowler and asked Fowler to add, as a job requirement for the Director position, that an applicant must hold a Certification of Parks and Recreation Professional ("CPRP") certificate.   Tyler already held the CPRP certification, and he thought the addition of the certification requirement would

---

[15]*Id.* at 41-44.

[16]*Id.* at 20-22.

[17]*Id.* at 93.

[18]*Id.* at 40.   *See also* doc. no. 25 (defendant's evidentiary submission, vol. 4), Exhibit 8 (Affidavit of Grady Tyler), at ¶¶ 5-6.

benefit him in the application process.[19]   Tyler also directly approached several members of the City Council and asked them for the job.[20]   Based on his discussions with Council members, Tyler reached the conclusion that he would not be hired as Director because the Council members viewed him as a "carry-over" of the past administration.[21]   Tyler did not want to face the disappointment of not getting the promotion, so he decided not to apply.[22]   Despite Tyler's decision, however, Mayor Fowler still requested that the City's Personnel Department include the CPRP certification requirement in the advertisements for the position.[23]

The City's Personnel Department posted the first internal notice of the opening for the Director position on January 15, 2003.  Neither the internal posting, nor the official job description attached to the posting, mentioned the CPRP requirement.[24] The official job description contained the following paragraph:

> **MINIMUM QUALIFICATIONS**
> Minimum Bachelor's degree in Physical Education or Recreation Administration with Master's level course work in the field; Master's degree strongly preferred; supplemented by three (3) to five (5) years

---

[19]*Id.* at ¶ 7.

[20]*Id.* at ¶ 8.

[21]*Id.* at ¶¶ 8-9.

[22]*Id.* at ¶ 10.

[23]Doc. no. 24 (defendant's evidentiary submission, vol. 3), Exhibit 6 (Affidavit of Lynn Fowler), at ¶¶ 10-12.

[24]Smith Affidavit, at ¶ 15; *see also id.* at Exhibit B (copy of January 15, 2003 internal posting).

previous experience and/or training that includes recreation administration, parks administration, and supervision; *or any equivalent combination of education, training, and experience which provides the requisite knowledge, skills, and abilities for this job.* Must possess and maintain a valid Alabama Driver's License.[25]

Also on January 15, 2003, the Personnel Department advertised the Director position in newspapers in Decatur, Huntsville, and Birmingham. These ads notified the public of the position opening, and invited individuals to apply for the position. The external newspaper ads did not include a copy of the official job description, but they did state that a CPRP certification was required.[26]

Plaintiff and Jeff Dunlap both submitted applications in response to this first round of advertisements. Theirs were among twenty-four initial applications for the position.[27] Mayor Fowler reviewed all the applications, and determined that only two to three applicants merited an interview, because only two to three of the applicants possessed the CPRP certification. Due to the low number of apparently qualified applicants, Fowler requested that the Personnel Department advertise the position a

---

[25]Smith Affidavit, Exhibit B (copy of job description), at 2 (italicized emphasis supplied; boldface and underlined emphasis in original).

[26]Smith Affidavit, at ¶ 17; *see also id.* at Exhibit C (copies of the external job posting and newspaper ads). In defendant's evidentiary submission, the cover sheet for Exhibit C to Smith's affidavit refers to *internal* job postings, not *external*. The court concludes that designation was error, as it is apparent from examining the notices and ads included in Exhibit C that they are *external* postings.

[27]Smith Affidavit, at ¶¶ 19-20.

second time before interviews were conducted.[28]   On February 13, 2003, the Personnel Department posted a second internal notice of the job opening, and it also advertised the position in newspapers in Florida, Birmingham, Nashville, Atlanta, and Decatur.   The February 13 *internal* posting included a copy of the official job description and, again, did not mention the CPRP requirement.   The February 13 *external* advertisements, however, did contain the CPRP requirement.[29]   On February 17, 2003, City Personnel Director Kenneth Smith notified all prior applicants, including plaintiff and Dunlap, that the position had been re-advertised, and that their applications would remain under consideration along with any applications received as a result of the second round of advertisements.[30]   The City continued to accept applications through February 27, 2003, and received a total of twenty-seven applicants from the first and second rounds.[31]   On March 3, 2003, Smith forwarded these applications to Council members for selection of individuals to interview.[32]

On March 16, 2003, Jeff Dunlap wrote a letter to the Mayor and Council, requesting that his name be removed from consideration for the Director position,

---

[28]Fowler Affidavit, at ¶¶ 16-17.

[29]Smith Affidavit, at ¶ 22.  *See also id.* at Exhibit F (copies of second internal posting and second external advertisements).

[30]Smith Affidavit, at ¶ 23.

[31]*Id.* at ¶ 24.

[32]*Id.* at ¶ 25; *see also id.* at Exhibit G (March 3, 2003 memo from Ken Smith to Council Members).

because he did not "have the proper certifications."[33]  Dunlap stated in his affidavit that he withdrew his application because he lacked the CPRP certification.[34]

The Council selected six individuals, including plaintiff and five male candidates, for interview.[35]  Council President Patricia Woller stated that, going into the interviews, the Council "was focusing on the individual's interviewed demonstration of abilities, experience, and ability to meets [sic] its expectations relating to future growth, expansion, and safe and efficient operation of the Parks and Recreation Department it envisioned."[36]  Plaintiff's interview took place on April 14, 2003, before Mayor Fowler and members the City Council.  Her performance on the interview did not meet the Council's expectations.  As Woller stated,

> Ms. Goforth's interview was very disappointing and she placed virtually all the emphasis on her ability to meet the City Council's expectations by having all the programs of the Parks and Recreation Department certified.  The City Council had not placed any emphasis on certification of the department, and in fact did not believe it to be a priority.  Ms. Goforth did not demonstrate to the City Council that she had the skills and incentive it was seeking for the Director's position.[37]

---

[33]Doc. no. 25 (defendant's evidentiary submission, vol. 4), Exhibit 9 (Affidavit of Jeff Dunlap), at ¶ 12.  *See also id.* at Exhibit C (March 16, 2003 letter).

[34]Dunlap Affidavit, at ¶ 12.

[35]*See, e.g.,* Woller Affidavit, at ¶ 21.

[36]Woller Affidavit, at ¶ 26.

[37]*Id.* at ¶ 25.  Ms. Woller's opinions about plaintiff's interview are representative of those of the Mayor and other Council members.  *See* doc. no. 22 (defendant's evidentiary submission, vol. 1), Exhibit 3 (Affidavit of Dorothy Montgomery), at ¶ 27;Russell Affidavit, at ¶ 21; doc. no. 24 (defendant's evidentiary submission, vol. 3), Exhibit 5 (Affidavit of Phil Hastings), at ¶¶ 14-15; Fowler Affidavit, at ¶ 24.

Plaintiff, on the other hand, claims that she *did* demonstrate progressive, forward-thinking ideas in her interview.  In addition to discussing her desire to obtain certifications for the Department's programs, plaintiff told her interviewers that she "wanted to expand [the Department's] programming by bringing new and creative programs in."[38]  For example, she discussed starting a city band and instituting an "arts in the park" program.[39]

After interviewing all six candidates, the Council selected one individual, Larry Vann, as a potential hire, and requested the Personnel Department to conduct a background check on him.  Vann, however, withdrew his application before the background check even began.[40]  The Council members testified that plaintiff was never a top contender among the remaining five finalists.[41]

After Vann's withdrawal, Smith reevaluated the job criteria for the Director position.  Because so few applications had been received from individuals possessing the CPRP requirement, because Dunlap withdrew his application, and because the official job description for the Director position did not include the CPRP requirement, Smith concluded it had been a mistake to include the CPRP requirement

---

[38]Goforth Deposition, at 57.

[39]*Id.* at 57-58.

[40]Woller Affidavit, at ¶ 28; Smith Affidavit, at ¶ 28.

[41]*See, e.g.,* Woller Affidavit, at ¶ 21; Montgomery Affidavit, at ¶ 25.

on the prior external job postings.[42]  Believing that the mistake had favored plaintiff and wrongly excluded Dunlap, Smith discussed with the Mayor, Council, and City Attorney whether Dunlap could again be considered for the position.  The City Attorney advised that Dunlap could be considered, but only if the City publicly advertised the position yet a third time, *without* the CPRP requirement.[43]  Smith notified Dunlap that the CPRP requirement had been removed from consideration.[44] Dunlap subsequently sent an undated letter to Smith, asking that his application be resubmitted to the Mayor and City Council.[45]

The City advertised the Director position for a third time on May 21, 2003, via both an internal posting, and several external advertisements.  None of these internal or external postings contained the CPRP requirement.[46]  On May 22, 2003, Smith sent a letter to all previous applicants, including plaintiff and Dunlap, stating that the position would be advertised again, and informing the prior applicants that their applications would be maintained on file and would be considered along with any new applications submitted.[47]  The Personnel Department accepted applications

---

[42]Smith Affidavit, at ¶ 29.

[43]*Id.*; *see also* Fowler Affidavit, at ¶¶ 27-28.

[44]Dunlap Affidavit, at ¶ 13; Smith Affidavit, at ¶ 30.

[45]Dunlap Affidavit, Exhibit D (undated letter from Jeff Dunlap to Ken Smith).

[46]Smith Affidavit, at ¶ 21.

[47]*Id.* at ¶ 32; *see also id.* at Exhibit L (copy of May 22, 2003 letter from Ken Smith).

through June 5, 2003.[48]

After all the applications had been received from the third posting, the Council decided to interview Dunlap.  The Council members based their decision on factors such as Dunlap's experience, their familiarity with Dunlap's work ethic and enthusiasm, and the elimination of the CPRP requirement.[49]  The Council scheduled Dunlap's interview for July 7, 2003, and decided they would interview other applicants only if Dunlap's interview did not go well.[50]  That need did not arise, however, because the Council was favorably impressed with Dunlap's interview.  Although Dunlap had only been employed with the Department for approximately four years,[51] Council President Patricia Woller stated that Dunlap

> demonstrated he had the ability, enthusiasm, new ideas, and skills the
> City Council determined were needed.  Also, his prior employment and
> excellent performance with the city as Parks Superintendent in which he
> oversaw maintenance on all the facilities throughout the Parks and
> Recreation Department, his extensive background and experience in
> operating his own business and performing extensive work for Decatur
> in it's [sic] Parks and Recreation Department, and in the City of
> Huntsville in the installation of systems in its newly established stadium,
> and his certifications in a number of directly job related fields were

---

[48]Smith Affidavit, at ¶ 33.

[49]Woller Affidavit, at ¶ 30; Montgomery Affidavit, at ¶ 31; Russell Affidavit, at ¶ 25; Hastings Affidavit, at ¶¶ 18-19.

[50]Woller Affidavit, at ¶ 33; Montgomery Affidavit, at ¶ 32; Russell Affidavit, at ¶ 27.

[51]*See* Smith Affidavit, Exhibit D, at document bearing Bates Stamp No. D-00714 (portion of Jeff Dunlap's application stating he began to work for the Department in 1999).

determining factors.[52]

The Personnel Department subsequently referred Dunlap for a screening and background check.[53]  Then, on July 8, 2003, the Council adopted a resolution to offer the position to Dunlap.[54]  Dunlap accepted, and assumed his duties as Director on July 21, 2003.[55]

According to defendant's EEO Affirmative Action Forms, plaintiff was born on February 24, 1947, and was fifty-five years old at the time she submitted her application for the Director position.[56]  The court could locate no evidence showing Dunlap's age at the time of his application.  Plaintiff holds a bachelor's degree in recreation management, and a master's degree in administrative sciences.[57]  On his application for the Director position, Dunlap indicated that the highest degree he had received was a bachelor's degree in business.[58]

## PART THREE

---

[52]Woller Affidavit, at ¶ 35.  *See also* Montgomery Affidavit, at ¶ 33; Russell Affidavit, at ¶ 28; Hastings Affidavit, at ¶ 22.

[53]*See* Smith Affidavit, at ¶ 36.

[54]Woller Affidavit, at ¶ 36; Montgomery Affidavit, at ¶ 34; Russell Affidavit, at ¶ 29; Hastings Affidavit, at ¶ 23.

[55]Smith Affidavit, at ¶ 38.

[56]*See* doc. no. 25 (defendant's evidentiary submission, vol. 4), Exhibit 10 (Affidavit of Karen Hood), at Exhibit J (EEO Affirmative Action forms).

[57]Goforth Deposition, at 31.

[58]Smith Affidavit, Exhibit D, at document bearing Bates Stamp No. D-00713 (portion of Dunlap's application indicating his educational background).

*Discussion*

Plaintiff claims the City's failure to promote her to the Director position was discriminatory on the basis of both her sex and her age.  Plaintiff acknowledges that she does not have direct evidence to support her claims.[59]  Thus, she must prove those claims with circumstantial evidence, navigating the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981).  Under this analysis, a plaintiff must first establish a prima facie case of disparate treatment, which creates a presumption of discrimination.  To rebut the presumption, the employer then must articulate a legitimate, nondiscriminatory reason for the disputed employment action.  If the employer does so, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely a pretext for unlawful discrimination.  *See McDonnell Douglas,* 411 U.S. at 802-05; *Burdine,* 450 U.S. at 252-56.

**A.**   *Prima Facie Case*

In a failure to promote case based upon gender discrimination, the plaintiff must establish the following elements of a prima facie case:  (1) she is a member of a protected group; (2) she applied for, and was qualified to fill, a position for which

---

[59]*See* doc. no. 33 (plaintiff's brief), at 15 ("The plaintiff can establish discrimination under the *McDonnell Douglas* framework.").

the defendant was accepting applications; (3) despite her qualifications, she was rejected for the position; and (4) after her rejection, the employer *either* kept the position open, *or* filled it with a person outside plaintiff's protected class.  *See, e.g.*, *Walker v. Mortham*, 158 F.3d 1177, 1179 n.2, 1185-93 (11th Cir. 1998) (explaining that a plaintiff need not introduce evidence of the relative qualification of the person promoted instead of plaintiff as part of her prima facie case for failure to promote).

The prima facie case for a failure to promote claim under the ADEA differs only slightly.  A plaintiff will establish a prima facie case of age discrimination by showing that:  (1) she was a member of the protected group of persons between the ages of 40 and 70,[60] (2) she applied for promotion to another position within her employer's organization, (3) she was qualified to perform the duties of the position to which she sought promotion, and (4) despite her qualifications, she was rejected and a substantially younger person was promoted instead.[61]  *See, e.g., Chapman*, 229

---

[60]The protections of the ADEA extend to those individuals who "are at least 40 years of age but less than 70 years of age."  29 U.S.C. § 621(a).

[61]     Unlike race and sex discrimination cases, the plaintiff in an age discrimination case need not necessarily prove that his replacement was outside the protected class, that is, under forty years of age.  The plaintiff in an age discrimination case may establish a prima facie case merely by establishing that his replacement was younger than he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination.

*Corbin v. Southerland Intern. Trucks*, 25 F.3d 1545 (11th Cir. 1994).

F.3d at 1024.

Plaintiff easily satisfies the elements of the prima facie case for both of her claims.  As a female over the age of forty, plaintiff belongs to the classes protected by both the ADEA, and the anti-gender-discrimination provisions of Title VII. Further, she applied for a promotion to the Director position, and defendant concedes she met the minimum qualifications for the position.[62]  Finally, plaintiff did not receive the promotion; instead, defendant awarded it to a younger male.[63]

**B.**     *Legitimate, Non-Discriminatory Reasons for the Employment Decision*

Defendant has met its burden of articulating a legitimate, non-discriminatory reason for choosing Dunlap over plaintiff for the Director position.  The City Council members testified they were familiar with Dunlap's work ethic and enthusiasm, and they were favorably impressed both with Dunlap's work experience within the Department, and with his prior experience in owning his own business.  Further, in

---

[62]*See* doc. no. 26 (defendant's initial brief), at 16 ("The City does not dispute that Goforth is a member of a protected class, met the published requirements for the position, and suffered an adverse employment action, *i.e.,* not being chosen for the position at issue.").  Defendant's argument — that plaintiff has not established a prima facie case because she cannot prove that she was equally or more qualified than Dunlap — is unavailing.  The comparative qualifications of applicants are appropriately considered at the pretext stage, not at the prima facie case stage, of the *McDonnel Douglas* burden-shifting analysis.  *See Walker,* 158 F.3d 1179 n.2, 1185-93.

[63]The court has located no documentation in the record of Jeff Dunlap's age.  Nonetheless, defendant concedes that Dunlap is younger than plaintiff, so as to satisfy this element of the prima facie case.  *See* doc. no. 26 (defendant's initial brief), at 26 ("Goforth can satisfy three elements of a *prima facie* case of age discrimination because she is over 40, was not hired for the position at issue and a younger applicant was given the position.").

his interview, Dunlap convinced the Council that he possessed the skills, ability, and enthusiasm necessary to meet the Council's expectations, especially with regard to the future growth and expansion of the Department.

In contrast, the Council formed an unfavorable impression of plaintiff during her interview. Plaintiff did not demonstrate that she could meet the Council's expectations of moving the Department forward to a future of growth and expansion. Instead, plaintiff focused on having the programs operated by the Department certified, which was not an important issue for the Council.

Plaintiff's arguments that defendant has not met its burden at this stage of the analysis are without merit. First, plaintiff appears to argue that the Council may not have actually compared plaintiff with Dunlap as a candidate and, thus, the Council's preference for Dunlap's interview performance cannot constitute a legitimate, non-discriminatory reason for hiring him. It is true that a defendant-employer "cannot testify in abstract terms as to what *might have* motivated the decision-maker; it must present specific evidence regarding the decision-maker's *actual motivations* with regard to each challenged employment decision." *Walker*, 158 F.3d at 1181 n.8 (emphasis supplied) (citing *Increase Minority Participation by Affirmative Change Today of Northwest Florida, Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1193-94 (11th Cir. 1990)). Here, however, each City Council member directly compared

plaintiff to Dunlap, and each offered specific reasons why he or she preferred Dunlap.

Plaintiff also argues that defendant's proffered legitimate reasons are insufficient because they are subjective. Not so. The Eleventh Circuit has held that a subjective reason for an employment decision, such as a poor interview, will be sufficient if the employer has "offered a clear and reasonably specific explanation of why . . . the decisionmakers[] arrived at that subjective conclusion." *Chapman*, 229 F.3d at 1035. *See also Denney v. City of Albany*, 247 F.3d 1172, 1185-86 (11th Cir. 2001) ("As *Chapman* makes clear, an employer's use of subjective factors in making a hiring or promotion decision does not raise a red flag."). Here, defendant did not baldly assert that plaintiff was overlooked for the promotion because of a poor interview. Instead, the Council members explained their reasoning, and offered several clear and specific reasons why they preferred Dunlap over plaintiff.

**C.**    *Pretext*

The burden now shifts to plaintiff to demonstrate that defendant's proffered legitimate, non-discriminatory reasons for its employment decision were merely a pretext for gender and age discrimination. Plaintiff cannot succeed by simply disagreeing with, or questioning, defendant's stated reasons. "Stated somewhat differently, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not

where, as here, the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). Rather, the plaintiff's burden is that of "cast[ing] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct' . . . ." *Id.* at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)). The plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. duPont de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal quotation marks omitted).

Plaintiff offers little to support her assertion that the City's asserted reasons for not awarding her the Director's position are pretextual. In her brief, she states that "[t]here are several reasons that the defendant's proffered legitimate, non-discriminatory reason, that Dunlap was more qualified than the plaintiff, is pretextual."[64] She stops there, however, failing to actually explain any of these "several" reasons. She only argues that,

---

[64]Doc. no. 33 (plaintiff's brief), at 25.

> [a]t the very least, summary judgment is inappropriate on the issue of comparative qualifications because a comparison of the qualifications in [sic] inherently factual. It would be improper for the court to reach a conclusion as to the relative qualification of the two (2) applicants, because at the summary judgment stage, the court's role is not to weigh the evidence.[65]

Plaintiff misapprehends the relevant legal principles. As the Supreme Court has acknowledged, "qualifications evidence may suffice, *at least in some circumstances*, to show pretext." *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 454 (2006) (citations omitted) (emphasis supplied). However, a plaintiff cannot show pretext "by simply arguing or even by showing that he was better qualified than the [individual] who received the position he coveted." *Alexander v. Fulton County,* 207 F.3d 1303, 1339 (11th Cir. 2000). Instead, the plaintiff must "show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks v. County Commission of Jefferson County,* 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Cooper v. Southern Co.,* 390 F.3d 695, 732 (11th Cir. 2004), *cert denied,* — U.S. — , 126 S. Ct. 478, 163 L. Ed. 2d 363 (2005)), and also citing *Ash,* 546 U.S. at 454).[66]

---

[65]*Id.*

[66]In *Ash v. Tyson Foods,* 546 U.S. 454 (2006), the Supreme Court disapproved of the standard previously employed by the Eleventh Circuit: *i.e.,* that "[p]retext can be established through comparing qualifications only when 'the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face.'" *Id.* at 454 (internal citations omitted). Even so, the Supreme

-21-

This court does not find the disparities between plaintiff's and Dunlap's qualifications to be so significant that no reasonable employer could have chosen Dunlap over plaintiff.  It is true that plaintiff held a Bachelor's degree in Recreation, and a Master's degree in Administration, while Dunlap held only a Bachelor's degree in Business.  Even so, educational background clearly was not the only, or even the most important, factor the City Council considered.  Further, while the job description for the Director position did state that a Bachelor's degree in a recreation-related field and a Master's degree were strongly *preferred*, it also provided that any equivalent level of training, education, or experience would be acceptable.  While plaintiff had worked in the Department for more years than Dunlap, Dunlap's experience in owning his own businesses was more important to the City Council, especially considering that the Council was trying to move the Department away from the allegedly stagnated leadership style that had existed under the previous Director. Finally, Dunlap satisfied the Department's subjective criteria more fully than plaintiff did.  Dunlap demonstrated in his interview that he possessed the ambition and forward-thinking attitude the City Council desired, while plaintiff did *not* satisfy the Council's expectations in that regard.

---

Court did approve of a standard employed elsewhere by the Eleventh Circuit: *i.e.,* "that 'disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* at 1197 (citing *Cooper,* 390 F.3d at 732).

In short, Plaintiff has failed to meet her burden of "cast[ing] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude" that defendant was not actually motivated by those legitimate reasons. *Combs,* 106 F.3d at 1538.  It is apparent that, after receiving two rounds of applications which produced few good candidates, the City decided to single out Dunlap for the position.  The City even went so far as to eliminate the CPRP requirement from any of the job postings, to ensure that Dunlap would be eligible to apply for the position.[67]  Nevertheless, the evidence shows only that the City preferred Dunlap over plaintiff because of his qualifications, work ethic, and vision, *not because he was a younger male*.  The EEO Affirmative Action Forms produced by the City show that many male *and* female applicants, ranging in age from 22 to 65, were turned down for the job.  Furthermore, the second round of applications received by the City produced five male candidates and one female candidate as "finalists" for interview.  Council members testified that plaintiff never was the top contendor among these candidates, and she was rejected, along with *four* male candidates.  These facts simply do not lead to the conclusion that the City was motivated by a sex- or age-based discriminatory animus when it selected Dunlap as Director.  Absent a

---

[67]The court does not condone the City's practice of altering job requirements in the middle of an application process.  As the City has no doubt learned from this case, such a practice only arouses suspicion and invites litigation.

discriminatory animus, plaintiff's claims must fail.

## PART FOUR

### *Conclusion*

Plaintiff has failed to meet her burden of establishing that the City's proffered legitimate, non-discriminatory reasons for not hiring her as Director of Parks and Recreation were merely a pretext for age or sex discrimination.   Accordingly, summary judgment will be granted on both of plaintiff's claims.  An appropriate order will be entered contemporaneously herewith.

DONE this 23rd day of January, 2007.

_____

United States District Judge